# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LESLEY ANDERSON,<br><div align="right">Plaintiff,</div><br>v.<br><br>BRIDGEWATER STATE UNIVERSITY;<br>CHRISTY LYONS GRAHAM, and<br>WILLIAM S. SMITH,<br><div align="right">Defendants.</div> | Civil Action No. 2013- |

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

### INTRODUCTION AND SUMMARY

The plaintiff Lesley Anderson suffers from certain cognitive disabilities as the result of a cerebral hemorrhage and stroke suffered when she was 11 years of age; she is now 24.  On August 2, 2012 she was dismissed from the graduate program in Counseling at Bridgewater State University ("BSU" or the "University") on account of (1) her failing performance on an examination taken without the accommodations to which she was entitled; and (2) her dismissal from a required internship resulting in a failing grade.  The dismissal was based on vague hearsay accusations of ethical misconduct not committed in any BSU course or program, and never reduced to writing.

Ms. Anderson was denied the right to review and rebut the charges, to introduce evidence in her own behalf, and to have the validity of the charges and the appropriate penalty determined by the BSU Graduate Education Council, in violation of her federal and state due process rights and specific University policies, and in breach of 42 U.S.C. § 1983 and the Americans with Disabilities Act, 42 U.S.C. § 12101. As a result of the wrongdoing of BSU and the named

defendants, Ms. Anderson's career prospects have been destroyed.  The tuition she has paid and the time she has invested in her graduate studies have been lost.

**PARTIES**

1.   The plaintiff Lesley Anderson resides at 125 Bayberry Circle, Bridgewater, Massachusetts.  Ms. Anderson was dismissed from the Mental Health Counseling program in the College of Graduate Studies of the defendant Bridgewater State University by a letter from the defendant William S. Smith on August 2, 2012, attached as Exhibit A, although she had been orally notified of her pending dismissal on July 24.

2.   The defendant Bridgewater State University, located at 131 Summer Street, Bridgewater, Plymouth County is a public institution, part of the higher education system of the Commonwealth of Massachusetts, and the largest of the nine state universities.  In fiscal year 2012, 11 percent of its revenues—almost $18 million--came from government grants and contracts, including, on information and belief, substantial federal grants.

3.   The defendant Christy Lyons Graham is and at all times relevant to this action was the Chair of the Department of Counselor Education, the professor teaching the required internship in counseling in which Ms. Anderson participated, and the person who determined that Ms. Anderson should be dismissed from her internship,.

4.   The defendant William S. Smith is and at all times relevant to this action was the Dean of the College of Graduate Studies at BSU.  He made the final determination that Ms. Anderson should be dismissed from the BSU graduate program.

## JURISDICTION

5.    This is a civil rights action arising under 42 U.S.C. § 1983.  Jurisdiction over the federal civil rights claim is pursuant to 28 U.S.C. § 1331.  Jurisdiction over other state law claims connected with the same transaction is pursuant to 28 U.S.C. § 1367.

6.    Although a state actor for the purpose of the Fifth and Fourteenth Amendments to the Constitution of the United States and the federal statutes enacted for the enforcement of the rights recognized therein, BSU is not an "arm of the state" immune to suit under the Eleventh Amendment.

## FACTS COMMON TO ALL COUNTS

7.    Ms. Anderson was in her second year of graduate studies toward a master's degree in Counseling when she was dismissed from the Mental Health Counseling program in the College of Graduate Studies on August 2, 2012.  She had already been notified of her pending dismissal from the program by an email from Prof. Nikki Freeburg dated July 24, 2012.

8.    Ms. Anderson was dismissed ostensibly for receiving a failing grade in two courses. She received a grade of "F" in Psychopharmacology for Non-Medical Professionals in Spring 2012, and in her internship as a Mental Health Counselor at Community Counseling of Bristol County, from which she was dismissed on July 6, 2012.

9.    The manner in which both grades were decided seriously violated Ms. Anderson's rights. Ms. Anderson was denied extra time to take the examination in her psychopharmacology course, an accommodation to which she was entitled on account of her disability.

10. Ms. Anderson suffered a brain hemorrhage in March, 2000, at the age of 14, and a stroke two months later.  As a result she suffers from certain deficits in cognitive processing and

executive function, affecting her comprehension of reading material, her memory, and her ability to plan and organize her activities.

11.   Ms. Anderson's mental impairment substantially limits her in nearly all the activities of daily life.  Ms. Anderson therefore suffers from a disability within the meaning of the Americans with Disabilities Act, 42 U.S.C. § 12102(1); *see also* 29 C.F.R. § 1630.2(g)(1).

12.   Despite her disability, Ms. Anderson successfully completed both high school and college, always with the help of certain accommodations including additional time to take her examinations.

13.   When Ms. Anderson enrolled at BSU, she informed Bridgewater State Office of Disability Resources of her disability and need for accommodation.  The Office recognized her disability and has assisted her in obtaining necessary accommodations from time to time.

14.   Dr. Louise Graham (not the defendant Dr. Christy Lyons Graham), who taught the psychopharmacology course, was aware of Ms. Anderson's disability from a previous course. She declined Ms. Anderson's offer at the beginning of the semester to present documentation, assuring her that there would be "no problem." Unfortunately she failed to make the necessary arrangements for the final examination even after Ms. Anderson raised the issue again after the midterm.

15.   The failure to accommodate Ms. Anderson violated BSU's Civil Rights, Disabilities and Discrimination Policy (as amended March 29, 2012):

> Bridgewater State University shall provide such methods for evaluating the achievement of students who have a handicap that impairs sensory, manual, or speaking skills as will best ensure that the results of the evaluation represents the students' achievement in the course, rather than reflecting the students' impaired sensory . . . skills.

16.   The failure to accommodate Ms. Anderson also violated Title II of the Americans with Disabilities Act.  BSU is subject to Title II, 42 U.S.C. § 12131(1)(B) ("any department, agency, special purpose district, or other instrumentality of a State or States or local government.")

17.     The defendant Dean Smith, apparently recognizing that Ms. Anderson's failing grade could be attributed to the denial of the accommodation to which she was entitled, reversed Ms. Anderson's automatic dismissal from the Mental Health Counseling program on May 14. Ms. Anderson was not offered the opportunity to be re-examined, but Dean Smith promised her the chance to take the course again, at her own expense, during the fall semester of 2012—a remedy that would not have made her whole.  The e-mail exchange between Dean Smith and Ms. Anderson is attached hereto as Exhibit B.

18.   However, Dean Smith dismissed Ms. Anderson from the BSU Mental Health Counseling program on account of her failing grades in both the psychopharmacology course and in her required internship during the spring semester of 2012 at Community Counseling of Bristol County ("CCBC,") notwithstanding his earlier promise.  See Ex. A.

19.   The failing grade was not based upon Ms. Anderson's overall conduct and performance in the clinical course.  Anderson's performance as a Mental Health Counselor intern was not unsatisfactory, although her Site Supervisor, Kristina Ciesielski, noted areas requiring improvement in a Fieldwork Evaluation dated June 27, 2012, attached as Exhibit C.

20.   The significant deficiencies noted in the evaluation concerned serious charges of unethical conduct—specifically, false reports or statements to her supervisors.  These charges, however, did not concern Ms. Anderson's conduct in the course as an intern, but as a counselor simultaneously employed by CCBC.  Allegedly "Lesley reported to [Ms. Ciesielski] that she had

fabricated a story regarding a particular session with a family including making up details about the family's clinician's actions and the child's safety in order to cover up her own actions."

21.   In fact, Ms. Anderson made no such report or admission, and the allegation is false. It is also unsupported by CCBC's later statements contained in a Performance Improvement Plan and Final Warning ("PIP"), attached hereto as Exhibit D. The extent of CCBC's "investigation," if any, is unclear, and there was no investigative report apart from the PIP. The PIP set forth conditions on which Ms. Anderson might continue to work for CCBC.

22.   Ms. Anderson was suspended from her internship on June 28, 2012, although she did not receive the Fieldwork Evaluation, if at all, until July 3.  Dr. Graham expelled her from the internship on July 7, 2012, while CCBC was still supposedly investigating Ms. Anderson's misconduct.

23.   The PIP, representing the CCBC's conclusions about Ms. Anderson's alleged false reports, was not given to Ms. Anderson until July 19, 2012. Thus Ms. Anderson was expelled from the internship and the graduate program on the basis of allegations conveyed verbally to Ms. Ciesielski by an unknown and unidentified person at CCBC, three weeks before CCBC committed its allegations to writing, and even though CCBC did not conclude that the seriousness of Ms. Anderson's alleged misconduct warranted her dismissal from her job.

24.   The PIP stated that 'Ms. Anderson engaged in unethical conduct by verbally fabricating detailed accounts of a Family Therapy session to her direct supervisor," meaning, apparently, that her verbal account of what occurred was different from that of "another [unidentified] team member present."  The PIP did not mention that the other team member is profoundly deaf.  The PIP does not state in what respects Ms. Anderson's verbal account was inaccurate, why the other account was deemed more credible, or why it mattered.

25.   The PIP included further allegations, even more unclear, that Ms. Anderson drafted "multiple" accounts of the session, of which one was admittedly accurate.  It says that "one draft was submitted to be billed to our payors," but whether it was the admittedly true or allegedly false version is not stated. CCBC evidently never solicited a copy from the payor. In any event, there is no suggestion that the inaccuracies, if any, had any bearing on CCBC's entitlement to payment.

26. A charge of professional misconduct of this sort falls within the BSU policy concerning academic integrity for graduate students (last amended March 5, 2012), attached hereto as Exhibit E.  The non-exclusive list of "serious breaches of academic integrity" includes "altering or falsifying data," the charge against Ms. Anderson, and a grade of "F" in the course is included among the possible appropriate penalties.

27. The "procedure for implementing a penalty for academic dishonesty or misconduct" set forth in the policy includes the essential elements of due process:

> The professor will notify graduate students of any alleged violations of the Graduate College's Academic Integrity Policy, and they shall discuss the matter in person, via e-mail or by phone within seven business days of the discovery of the alleged misconduct. If it is determined that academic dishonesty or misconduct has occurred, the student's advisers, the graduate program coordinators, department chairpersons, the appropriate college deans and the dean of the Graduate College will be notified by the professor in writing of the misconduct, the proposed penalty, and the outcome of the discussion with the student.  A record of the case, including the letter from the professor, along with any supporting documentation, will be kept in [the] student's files at the College of Graduate Studies.

28. *After* that determination, the student may appeal to the Dean of the College of Graduate Studies, i.e., Dean Smith. The Graduate Education Council ("GEC") rules on the appeal, after a meeting at which the student may be represented by a representative, presumably including legal counsel.  The GEC must make its decision in writing.  See Ex. E.

29. Neither Prof. Graham nor Dean Smith informed Ms. Anderson that her alleged misconduct fell within the Academic Integrity Policy or of her rights thereunder.  Prof. Graham, having apparently determined that "academic dishonesty or misconduct [had] occurred," did not notify Dean Smith "in writing of the misconduct, the proposed penalty, and the outcome of the discussion with the student."

30.  Rather Professor Graham determined that Ms. Anderson should be expelled from the internship and receive a failing grade in the course, and Dean Smith determined to expel her from the Graduate Program in counseling, without affording her any of the due process rights guaranteed to all members of the BSU community by the University Statement of Rights, attached hereto as Exhibit F, including "the right to know the charges made against her; the right to know the origin of the charges; the right to a hearing; the right to state her version of the events; [and] the right to appeal."

31.  Ms. Anderson asked for the opportunity to exercise these specifically enumerated due process rights in a letter from her attorney to Dean Smith dated September 17, 2012.  On November 2, 2012, the University's counsel replied that "[i]f Ms. Anderson disagreed with her dismissal, she could have followed the appeal process outlined in the College of Graduate Studies Student handbook and in the Department of Counselor Education Student Handbook," although the purpose of the letter was precisely to demand her right to due process including an appeal if necessary.

32.  Ms. Anderson has been damaged by the wrongful and unlawful actions of the University, Dean Smith and Prof. Graham by the loss of her prospects for a career as a professional counselor; by her probable inability to enroll for further graduate education in any field, having been dismissed from the BSU counseling program for alleged ethical misconduct;

by the loss of the sums she invested in graduate tuition and costs, approximately $17,000; and by

the loss of potential income foregone during her course of graduate studies.

33.   As a result of her wrongful dismissal from the Graduate Program and the

unsupported and defamatory allegations against her, Ms. Anderson has suffered, and continues to

suffer, extreme emotional distress.  Her ability to work, sleep and eat has been affected.  Her

social interactions and relations with family and friends have deteriorated.  Her senses of

competence and self-worth have been injured.

## COUNT I

### Deprivation of Rights under Color of Law in Violation of 42 U.S.C. § 1983
### Bridgewater State University

34.   The allegations of ¶ 1 – 33 of this Complaint are hereby realleged and incorporated

into this Count I by reference.

35.   The plaintiff Lesley Anderson has a property interest in continuing her graduate

studies in counseling at BSU, and may not be deprived of the same by a state actor without due

process of law.

36.   By expelling Ms. Anderson from the Graduate Program in Counseling, on the basis

of vague hearsay allegations of misconduct committed not in connection with any University

course but during her employment by a third party; by failing to conduct an impartial

investigation of  such charges; by failing to provide Ms. Anderson with a written specification

thereof and a reasonable opportunity to respond thereto; by failing to conduct a hearing at which

Ms. Anderson  might present evidence and cross-examine witnesses against her, and by

depriving Ms. Anderson of an opportunity to appeal, the defendant Bridgewater State University

deprived Ms. Anderson of rights and privileges secured to her by the Fifth and Fourteenth

Amendments to the Constitution of the United States, in violation of 42 U.S.C. § 1983, to her harm.

## COUNT II

### Deprivation of Rights under Color of Law in Violation of 42 U.S.C. § 1983
### Professor Christy Lyons Graham

37.   The allegations of ¶ 1 – 33 of this Complaint are hereby realleged and incorporated into this Count II by reference.

38.   The plaintiff Lesley Anderson has a property interest in continuing her graduate studies in counseling at BSU, and may not be deprived of the same by a state actor without due process of law.

39.   By expelling Ms. Anderson from her clinical internship and giving her a failing grade in the associated course without due investigation, on the basis of vague hearsay allegations of misconduct committed not in the course of her internship but during her employment by a third party; by failing to conduct an impartial investigation of  such charges; by failing to provide Ms. Anderson with a written specification thereof and a reasonable opportunity to respond thereto; and by failing to advise Ms. Anderson of her right to a hearing at which Ms. Anderson  might present evidence and cross-examine witnesses against her, and of her opportunity to appeal, the defendant Prof. Christy Lyons Graham, acting under color of state law, deprived Ms. Anderson of rights and privileges secured to her by the Fifth and Fourteenth Amendments to the Constitution of the United States, in violation of 42 U.S.C. § 1983.

## COUNT III

### Deprivation of Rights under Color of Law in Violation of 42 U.S.C. § 1983
### <u>Dean William S. Smith</u>

40.    The allegations of ¶¶ 1 – 33 of this Complaint are hereby realleged and incorporated into this Count III by reference.

41.    The plaintiff Lesley Anderson has a property interest in continuing her graduate studies in counseling at BSU, and may not be deprived of the same by a state actor without due process of law.

42.    By expelling Ms. Anderson from the University Graduate Program in Counseling on the basis of vague hearsay allegations of misconduct committed not in the course of her internship but during her employment by a third party; by failing to conduct an impartial investigation of  such charges; by failing to provide Ms. Anderson with a written specification thereof and a reasonable opportunity to respond thereto; by failing to advise Ms. Anderson of her right to a hearing at which Ms. Anderson  might present evidence and cross-examine witnesses against her and of her opportunity to appeal; and by failing to conduct such hearing the defendant Dean William S. Smith, acting under color of state law, deprived Ms. Anderson of rights and privileges secured to her by the Fifth and Fourteenth Amendments to the Constitution of the United States, in violation of 42 U.S.C. § 1983, to her great harm and damage.

### COUNT IV

### <u>Breach of Contract—Bridgewater State University</u>

43.   The allegations of ¶¶ 1 – 33 of this Complaint are hereby realleged and incorporated into this Count IV by reference.

44.   At all times relevant to this action the plaintiff Lesley Anderson and the defendant Bridgewater State University were mutually bound by an executory contract under which the University was obligated to provide Ms. Anderson with an opportunity to earn her degree based upon a fair and objective evaluation of her academic performance and professional fitness.

45.   By expelling Ms. Anderson from the University Graduate Program in Counseling on the basis of vague hearsay allegations of misconduct committed not in the course of her internship but during her employment by a third party, and by denying her the due process rights specifically guaranteed to her by its own codes, policies and regulations, which were incorporated into and formed part of the contract between the parties, the University materially breached such contract, to Ms. Anderson's great harm and damage.

46.   By expelling Ms. Anderson from the University Graduate Program in counseling in part in account of a failing grade in an academic course, after denying Ms. Anderson the reasonable accommodation necessary for the fair evaluation of her achievement despite her disability, the University denied her the rights specifically guaranteed to her by its own codes, policies and regulations, which were incorporated into and formed part of the contract between the parties, and thereby materially breached such contract, to Ms. Anderson's great harm and damage.

## COUNT V

### Breach of Covenant of Good Faith and Fair Dealing
### <u>Bridgewater State University</u>

47.   The allegations of ¶¶ 1 – 33 of this Complaint are hereby realleged and incorporated into this Count V by reference.

48.   At all times relevant to this action the plaintiff Lesley Anderson and the defendant Bridgewater State University were mutually bound by an executory contract which included an implied covenant of good faith and fair dealing. under which the University was obligated to provide Ms. Anderson with an opportunity to earn her degree based upon a fair and objective evaluation of her academic performance and professional fitness.

49.   By expelling Ms. Anderson from the University Graduate Program in Counseling on the basis of vague hearsay allegations of misconduct committed not in the course of her internship but during her employment by a third party, and by denying her both the due process rights specifically guaranteed to her by its own codes, policies and regulations, and the right to a fair evaluation of her academic performance despite her disability or handicap, the University breached its covenant of good faith and fair dealing, to Ms. Anderson's great harm and damage.

## COUNT VI

### Breach of the Americans with Disabilities Act
### Bridgewater State University

50.   The allegations of ¶¶ 1 – 33 of this Complaint are hereby realleged and incorporated into this Count VI by reference.

51.   By denying the plaintiff Lesley Anderson the reasonable accommodation to which she was entitled and which she required for a fair evaluation of her academic achievement in her psychopharmacology course, and by basing her dismissal from the Graduate Program in Counseling in part upon the failing grade she received as a consequence of its denial of such reasonable accommodation, the University violated her rights under the Americans with Disabilities Act, 42 U.S.C. § 12101, to her great harm and damage.

### PRAYER FOR RELIEF

WHEREFORE the plaintiff Lesley Anderson prays for the following relief:

1.    A preliminary injunction in the nature of mandamus requiring the University to permit Ms. Anderson to be readmitted to the Graduate Program in Counseling for all purposes *pendente lite*;

2.    In lieu of such readmission for all purposes, a preliminary injunction in the nature of mandamus requiring the University to readmit Ms. Anderson for the spring semester of 2013 for the limited purpose of retaking the course in psychopharmacology which she failed to pass in during the spring semester of 2012, with reasonable and appropriate accommodations;

3.    An award of compensatory and punitive damages, with statutory interest both pre- and post-judgment, costs and reasonable attorney's fees in an amount no less than $75,000;

4.    Such other and further relief as may to this Court seem just.

**THE PLAINTIFF DEMANDS TRIAL BY JURY**

LESLEY ANDERSON, Plaintiff
by her attorney,


___/s/ David J. Fried_____
David J. Fried, BBO# 179640
DAVID J. FRIED & ASSOCIATES
24 Thorndike Street Suite 300
Cambridge, MA 02141
(617) 577-8090
dfried@fried-law.com

Dated:  January 16, 2013